**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 26, 2015[*]
Decided June 29, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2693

| | |
|---|---|
| JASMON STALLINGS, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 10 C 6987 |
| LIPING ZHANG, et al., | |
|     *Defendants-Appellees*. | James F. Holderman, |
| | *Judge*. |

**O R D E R**

Jasmon Stallings, an Illinois prisoner, appeals the grant of summary judgment for prison medical personnel in this deliberate-indifference suit under the Eighth Amendment and 42 U.S.C. § 1983. Stallings had a painful scar on the back of his neck and was unsatisfied that prison medical staff refused to remove it surgically. But his disagreement with the prison doctors about the appropriate course of treatment does not establish deliberate indifference, so we affirm the district court's judgment.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See Fed. R. App. P. 34(a)(2)(C).

In 2008 Stallings, who is incarcerated at Stateville Correctional Center, started having trouble with a keloid scar on the back of his neck near the base of his head. A keloid is an enlarged, raised scar caused by overproduction of scar tissue. According to the depositions of two physicians at the prison, keloids are notoriously difficult to treat, and surgical removal can exacerbate them. See also *Keloids and Hypertrophic Scars*, American Osteopathic College of Dermatology, http://www.aocd.org/?page= KeloidsAndHypertroph (last visited June 8, 2015). Stallings's keloid, about two inches long and one inch wide, was painful and regularly became irritated and itchy. It bled if he scratched it, and at times it became infected. According to Stallings, it prevented him from lying on his back, disrupted his sleep, and caused headaches, dizziness, and fainting spells.

LaTanya Williams, a physician's assistant, first saw Stallings in 2008. On that visit Williams evaluated the keloid and noticed that it was bleeding. She prescribed antibiotic ointment for use twice a day and told Stallings to return as needed. She saw him several more times in 2010 and gave him combinations of antibiotics, over-the-counter painkillers, topical steroids, and lotion to help with the itching, and instructed him to use warm compresses. She also advised him to avoid touching the keloid.

Liping Zhang, a doctor at the prison, saw Stallings six times, first in October 2008 and then several more times in 2010. On the first visit, she observed that the keloid was not bleeding, but it appeared to be infected and its surrounding skin showed signs of scratching. She prescribed a lotion to help with the itchiness and a topical antibiotic. She saw Stallings again the next month and prescribed a topical steroid cream and an oral medication. When he returned 15 months later with complaints that the keloid was causing headaches and dizziness, Dr. Zhang took an x-ray and ran blood tests, and ruled out any connection between the keloid and the headaches or dizziness. She did, however, prescribe medication for Stallings's dizziness. A few months later Stallings returned, complaining that the keloid continued to itch and bleed, and he asked that it be removed. Dr. Zhang suggested more topical medications, which Stallings refused. She also told him that surgery could make it grow larger and exacerbate the symptoms, and she concluded that the surgery was not necessary.

After Dr. Zhang stopped working at Stateville in 2010, Stallings saw other doctors for unrelated conditions. Stallings saw Dr. Parthasarathi Ghosh once in 2011. The parties dispute whether Stallings complained about the keloid at that appointment: Dr. Ghosh's report from that visit did not mention the keloid, but Stallings contends that he told the doctor about it and the doctor told him "you're not here for that," and then

refused to discuss it further. Stallings also saw Dr. Ronald Schaefer twice in 2011 for an unrelated condition. Dr. Imhotep Carter, who became the medical director in 2011, says that he never met Stallings or provided him with any care, but Stallings asserts that the doctor refused to see him about an incident in which he fainted and fell out of bed—an event that he attributes to the keloid. In 2012 Stallings received two steroid injections at the prison from Dr. Dubrick, who is not a defendant. The injections apparently exacerbated the keloid's symptoms, and in 2015 Stallings had the keloid removed.

In the meantime Stallings sued Williams and doctors Zhang, Ghosh, Schaefer, and Carter, asserting that they were deliberately indifferent to his medical needs by refusing to surgically remove the keloid. (Stallings also named as defendants Wexford Health Sources and the Illinois Department of Corrections, but he does not address them on appeal and we do not discuss them further.)

The district court granted the defendants' motions for summary judgment. The court assumed that Stallings's condition was sufficiently serious and understood Stallings to argue that the doctors exhibited deliberate indifference by refusing to remove the keloid. The court then recounted the doctors' attempts to manage the symptoms through use of oral and topical treatments, as well as steroid injections. Stallings, the court concluded, presented no evidence to show that surgical removal was an appropriate course of treatment or that the defendants' decision not to remove the keloid surgically departed from any accepted medical judgment, practice, or standard. In sum, the court wrote, "The fact that Stallings's personal cost-benefit analysis differs from that of his treating physicians does not give rise to a deliberate indifference claim."

On appeal Stallings generally disputes the district court's conclusions that he failed to establish that surgical removal of the keloid was necessary or that his doctors' course of treatment amounted to deliberate indifference. As evidence of deliberate indifference, he points to the admissions of two defendants that they never treated the keloid, and to the ineffective treatments, which he argues underscore the necessity of surgery. We agree with the district court that Stallings did not present evidence to show that surgery was necessary. The heart of Stallings's claim is a disagreement about the proper course of treatment, but that is insufficient to overcome summary judgment. See *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006). To survive summary judgment, Stallings needed to present evidence that the doctors' choices were so "significant a departure from accepted professional standards or practices" that it is questionable whether they actually exercised professional judgment. See *Pyles*, 771 F.3d at 409. The undisputed evidence

shows that surgical removal can make keloids worse, and Stallings presented nothing to show that the doctors' conservative course of treatment—including antibiotics, pain killers, steroids, anti-inflammatories, and itch relievers—significantly departed from accepted professional standards.

Stallings also asserts that the district court's ruling wrongly accounted for the steroid injection he received from Dr. Dubrick—who as noted is not a defendant—in concluding that his course of treatment fell short of deliberate indifference. But Stallings misapprehends the court's rationale: even though the court mentioned the injections, it did not rely on them in concluding that the named defendants were not deliberately indifferent.

Accordingly, we AFFIRM the judgment of the district court.